Albert C. Ruehmann III and Judy M. Ruehmann v. Commissioner.
Ruehmann v. Commissioner
Docket No. 6393-70 "SC".
United States Tax Court
T.C. Memo 1971-157; 1971 Tax Ct. Memo LEXIS 176; 30 T.C.M. (CCH) 675; T.C.M. (RIA) 71157; June 30, 1971, Filed Albert C. Ruehmann, pro se, 3029 Cardinal Drive, Augusta, Ga, Thurman E. Shaw, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1967 in the amount of $307.17. The issues for decision are: (1) Whether petitioner is entitled to deduct as ordinary and necessary business expenses the amount of $2,065, or any part thereof, which amount is composed of $808 paid in connection with attending the University of Georgia Law School from January to June 1967 and $1,257 paid in attending Harvard Law School from September through December 1967. (2) If petitioner prevails in this case, should he be awarded costs consisting of his $10 *177 filing fee under 28 U.S.C. 2412, as amended July 18, 1966, Pub. L. 89-507. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Augusta, Georgia at the time of the filing of their petition in this case, filed their joint Federal income tax return for the calendar year 1967 with the district director of internal revenue, Boston, Massachusetts. Albert C. Ruehmann III (hereinafter referred to as petitioner) received an A.B. degree from Georgia State College in June 1964. He entered the University of Georgia Law School as a full-time student in September 1964. In 1966, after having completed 2 years of the study of law at the University of Georgia, petitioner took the Georgia Bar examination. [1] On or about December 10, 1966, petitioner was notified that he had passed the Georgia State bar examination and on December 16, 1966, he became a member of the State Bar of Georgia, authorized to practice law in the State of Georgia. In September of 1966 petitioner returned as a third-year student to the University of Georgia Law School. He completed the fall quarter of 1966 in that year *178 and in the year 1967 completed the winter and spring quarters at the University of Georgia Law School, receiving his LL.B. degree from that law school on June 3, 1967. During the summer of 1966 petitioner was employed in Atlanta, Georgia as a law clerk by the law firm of Kilpatrick, Cody, Rogers, McClatchey and Regenstein (hereinafter referred to as the Kilpatrick Firm). He received a bimonthly salary of $225. Petitioner was again employed by the Kilpatrick Firm during his Christmas vacation from law school in 1966. Petitioner informed the Kilpatrick Firm that he had passed the Georgia Bar Examination and had been admitted to the State of Georgia Bar. Petitioner received a salary for his work during his Christmas vacation on the basis *179 of $270 bimonthly. In the fall of 1966 petitioner applied for admission to Harvard Law School as a graduate law student working toward his LL.M. degree. By letter dated February 2, 1967, petitioner was notified that he had been accepted as a graduate student at Harvard Law School. At the time petitioner attended the University of Georgia Law School the requirement for receipt of an LL.B. degree was the satisfactory completion of 135 quarter hours of law courses with certain specified courses included in the hours to be completed. By January 1, 1967, petitioner had completed 106 quarter hours of work and had completed all the required courses. During the winter and spring quarters of 1967 petitioner successfully completed 30 quarter hours of law school work, thereby becoming entitled to receive his LL.B. degree. While attending the University of Georgia Law School as a full-time student during the winter and spring quarters of 1967 petitioner taught a course in business law in a vocational and technical school in Clarke County. He did research work for one of the professors at the University of Georgia and worked as a student assistant librarian at the University of Georgia. *180 677 Commencing immediately after receiving his LL.B. degree from the University of Georgia in June 1967 and continuing until the first of September 1967, petitioner was employed by the Kilpatrick Firm. He was employed as a lawyer, paid the same salary as other beginning lawyers who were members of the Bar, and assigned the same type of work that other lawyers of comparable experience in the Kilpatrick Firm were assigned. During the summer of 1967 the Kilpatrick Firm employed four law students who were not assigned work comparable to that assigned to petitioner but were assigned work comparable to the work petitioner had been assigned in 1966 when he worked for the Kilpatrick Firm as a law clerk. The procedure used by the Kilpatrick Firm in hiring law students as law clerks is to have one member of the firm interview at various law schools and invite students whom they might be interested in hiring to come for an interview at the offices of the firm. When the students arrive, they are interviewed by other members of the firm's employment committee and that committee decides to which students offers for summer work will be made. When permanent employment in a legal capacity is *181 to be offered by the Kilpatrick Firm to an individual, the prospective employee meets everyone in the firm and all members of the firm pass on the acceptability of the prospective employee. However, the recommendations of the employment committee are generally followed except in unusual circumstances. In the fall of 1966 the members of the Kilpatrick Firm agreed that they wished to employ petitioner in 1967 on a full-time basis. Since it is customary to make offers to law students who will graduate in June by December 1 of the preceding year, the fact that the Kilpatrick Firm was desirous of employing petitioner on a permanent basis was communicated to petitioner sometime prior to December 1, 1966. This offer was made even though the members of the firm did not know whether petitioner's military obligation would permit him to come with the firm on a continuing basis. When petitioner came with the Kilpatrick Firm in June 1967, it was understood that he could remain with that firm on a continuing basis if his military obligation was to be waived. It was the custom of the Kilpatrick Firm to offer permanent employment to graduating law students even though the student planned to spend *182 one year in a clerkship or in attending law school as a graduate student as a candidate for an LL.M. degree. The fact that the work of the employee who came with the firm in June would be interrupted for a 9-month to 1-year period to obtain further legal education did not cause the firm to refrain from offering that employee permanent employment. However, where an individual had a military obligation which would extend over a period of 2 to 4 years, no definite commitment with respect to employment after completion of that obligation would be made to that individual. However, the Kilpatrick Firm had an understanding with petitioner that if he were required to discharge his military obligation, he could return as an associate with the Kilpatrick Firm when he completed his military service if circumstances had not changed. This was not the customary understanding which the Kilpatrick Firm had with employees who came to work with the firm before entering military service. Petitioner attended Harvard Law School from September 1967 through June 1968, receiving his LL.M. degree from that school in June 1968. Shortly prior to the time he graduated from Harvard Law School petitioner was *183 notified that he would be called to active duty in the Army within a few months and assigned to the office of the Judge Advocate General of the Department of the Army. The Kilpatrick Firm has over 40 lawyers and has various individuals assigned in specialized filed sof legal work. Petitioner's work with that firm included corporate and commercial law problems, securities problems, insurance problems, and labor law problems. The courses which petitioner took in his graduate work at Harvard Law School were Business Planning, Collective Bargaining, Financial Planning, Creditor's Rights, Insurance, and Securities Regulations. It was customary for persons who took and passed the Bar examination in the State of Georgia after completing 2 years of law school to complete their third year of school and this was generally expected of students who were to be employed by firms such as the Kilpatrick Firm in Atlanta. During the calendar year 1967 petitioner was paid a total of $2,100 for his work in the Kilpatrick Firm, $86.40 for teaching the course in Clarke County, $180 for the research work he did for a professor at the University of Georgia and $315.75 for working as an assistant librarian *184 at the 678 University of Georgia. Petitioner did not work during the fall of 1967 other than his work as a student attending graduate classes at Harvard Law School. In the spring of 1968 petitioner did research for four different law firms in Boston, receiving $410, $122, $350, and $125, respectively, from those firms. When petitioner received notice at approximately the time he received his LL.M. degree from Harvard Law School that he would have to report in September to discharge his military obligation, he obtained a position for the period between his graduation and September with the law firm of Epstein & Salloway in Boston. He was not admitted to the Bar of the State of Massachusetts when he was employed by this law firm. He was paid $2,705 for his summer's work and in September 1968 he entered the military service as a captain in the office of the Judge Advocate General of the Department of the Army. In this capacity in the Army, he did legal work. Petitioners on their joint Federal income tax return for the year 1967 claimed a deduction for educational expenses of $2,065, composed of $808 which petitioner expended in attending the University of Georgia Law School *185 from January 1 through June 3, 1967 and $1,257 which petitioner expended in attending Harvard Law School during the period September 15, 1967 to December 31, 1967. Respondent in his notice of deficiency disallowed this claimed deduction with the explanation that during the year 1967 petitioner was a full-time undergraduate and graduate law student and was not then currently employed or otherwise gainfully engaged in a trade or business within the meaning of section 162(a), I.R.C. 1954, [2] and the related regulations and additionally because the expenses were incurred primarily for personal rather than business purposes in that they were incurred in preparing petitioner to enter the legal profession. Respondent further determined that the $808 which petitioner expended at the University of Georgia Law School was not deductible because it was incurred for the purpose of meeting the minimum standards of education generally required by the legal profession. Opinion Section 162(a) provides for the deduction *186 of ordinary and necessary business expenses. Section 1.162-5, Income Tax Regs., as amended by T.D. 6918, 1967-1 C.B. 36, provides for deductions under the circumstances therein stated of expenses for education. [3] This regulation allows 679 expenditures made by an individual for education to be deducted if the education "maintains or improves skills required by the individual in his employment or other trade or business" unless the expenditures are made for education which is required of the individual in order to meet the minimum educational requirements "for qualification in his employment or other trade or business" or are expenditures made by an individual for education which is "part of a program of study being pursued by him which will lead to qualifying him in a new trade or business." *187 As we held in Arthur M. Jungreis, 55 T.C. 581 (1970), for the deduction of educational expenses to be allowable, the expense must be an ordinary and necessary business expense. Therefore, this deduction is allowable only to a person who is engaged in a trade or business. In our view petitioner's work while he was a law student at the University of Georgia was secondary to his attendance at law school and did not place him in the trade or business of being a lawyer. Arthur M. Jungreis, supra. From the facts in this case we have concluded that petitioner's attendance at the University of Georgia Law School from January 1 through June 3, 1967, when he received his LL.B. degree was education generally required of a lawyer to meet the minimum educational requirements for qualification for employment in a law firm of the type by which petitioner was employed in 1967. It is obvious that since petitioner was admitted to the Bar in December 1966, he could have practiced law in the State of Georgia, had he not continued with his law school work until receipt of his LL. *188 B. degree. However, from the testimony in this record, we conclude that the last two quarters of petitioner's work toward his LL.B. degree were a part of a program of study which was being pursued by him which would lead to qualifying him as a lawyer. He had entered the University of Georgia Law School on the 3-year legal program. The final two quarters of that program were required in the program of study he was pursuing leading to receipt of his LL.B. degree. Even though because of the law in Georgia at the time he was able to be admitted to the Bar before actually receiving his LL.B. degree, it was customary for lawyers in Georgia to obtain an LL.B. degree before beginning the practice of law. [4]
We therefore hold that petitioner is not entitled to deduct the $808 spent by him in connection with completing the work for his LL.B. degree in the winter and spring quarters of 1967. Whether the *189 $1,257 spent by petitioner in attending the graduate law program at Harvard Law School is deductible by petitioner as an educational expense has been narrowed by respondent's concession in his reply brief to the question of whether petitioner "was engaged in the trade or business of practicing law prior to entering Harvard." In his reply brief, respondent makes the following statement in this respect: With respect to Albert's LL.M. degree, respondent concedes that under the 1967 regulations petitioners may deduct these expenses if the Court finds that Albert was engaged in the trade or business of practicing law prior to entering Harvard. Respondent admits that the 1967 regulations do not deny the educational expense deduction merely because the expenses were incurred in pursuit of a chosen specialty. Petitioners correctly point out in their opening brief (pp. 16-17) that the Court in Johnson v. United States, 27 AFTR2d 71-1239 (1971), was incorrect in denying the deduction on the grounds that the taxpayer was pursuing a specialty, since the Court in that case was applying the 1967 regulations. (Under the 1958 regulations, the decision of the Court is correct.) However, *190 the Court reached the correct result since it found that the taxpayer was never engaged in an existing trade or business, and therefore, denial of the deduction was proper. In the instant case, petitioners should be denied the deduction for Albert's LL.M. expenses, not because he is pursuing a specialty, but because he has never 680 engaged in a trade or business. (Emphasis supplied.) We view respondent's concession to be of more than ordinary significance since it is with respect to his interpretation of his own regulations. We interpret respondent's statement, which we have quoted, to be a concession by respondent that the work taken by petitioner at Harvard Law School did improve the skills required in the practice of law, that this graduate work in law was not necessary to meet the minimum educational requirements of a legal position or the legal profession and was not a program of study in law which qualified petitioner in a new trade or business within the meaning of the new regulations. We also interpret respondent's reply brief as conceding that if petitioner was engaged in the practice of law prior to entering Harvard Law School as a graduate student, he continued *191 to be engaged in that trade or business while attending graduate school at Harvard. On all the facts in this record and with particular reference to the fact that petitioner was a member of the Bar of Georgia prior to June 1967 and did the same work as other inexperienced lawyers in the firm by which he was employed in the summer of 1967, we conclude that petitioner was engaged in the trade or business of practicing law from June to September 1967. Therefore, in light of respondent's concessions, we hold that petitioner is entitled to deduct the $1,257 he spent in attending Harvard Law School in the fall of 1967. We need not decide whether, as petitioner contends, this Court is authorized by 28 U.S.C. 2412 to award costs to the prevailing party. This section of the Code merely provides that a judgment for costs as enumerated in 28 U.S.C. 1920 "may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action." Where, as here, neither party is completely the prevailing party, *192 an award of costs would not be appropriate even if the provisions of 28 U.S.C. 2412 are applicable to this Court. Decision will be entered under Rule 50. Footnotes
1. Ga. Code Ann. Sec. 9-103↩, prior to its amendment in 1966, required only 2 years of law school study for an applicant to be permitted to take the Georgia Bar examination. As amended in 1966 the statute required receipt of an LL.B. degree or its equivalent for a person to be permitted to take the bar examination except that any person who was enrolled in law school when the statute was amended was exempt from the provisions of the amendment.
2. All references are to the Internal Revenue Code of 1954.↩
3. Sec. 1.162-5, Income Tax Regs., as amended by T.D. 6918, 1967-1 C.B. 36 provides in part as follows: Expenses for education. - (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or * * * (b) Nondeductible educational expenditures - (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. * * *
(3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses: * * * This regulation is applicable to taxable years beginning after December 31, 1967. However, respondent by Rev. Rul. 68-191, 1968-1 C.B. 67, allowed a taxpayer to elect to apply either this regulation or the regulations promulgated in 1958 in determining the deductibility of claimed expenses for education. Petitioner in this case elected to have the amended regulation apply. We have recognized the right of a taxpayer to make such an election. Arthur M. Jungreis, 55 T.C. 581↩ (1970).
4. Actually, before petitioner completed the work for his LL.B. degree the law required receipt of such a degree or its equivalent by an applicant to take the Bar examination, except as to those individuals already enrolled in a law school on the effective date of the change in the law.↩